IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN MAXWELL MONTIN, | ) |
| Plaintiff, | ) 4:05cv3109 |
| vs. | ) MEMORANDUM AND ORDER |
| JOHN J. BATTERSHELL, et al., | ) |
| Defendants. | ) |

This matter is before the court on filing no. 30, the Motion to Dismiss filed by the defendants, John J. Battershell, et al.; filing no. 34, the Motion for Leave to File Amended Complaint (with Amended Complaint attached) filed by the plaintiff, John Maxwell Montin; and filing no. 40, the plaintiff's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction.  As an initial matter, filing no. 34 is granted, and the Amended Complaint attached to filing no. 34 is now the operative complaint in this action. In his Amended Complaint, the plaintiff seeks injunctive, declaratory and monetary relief from persons who he claims have conspired to deny him due process and equal protection, who have infringed his privilege against self-incrimination, and who have inflicted cruel and unusual punishment upon the plaintiff during his confinement at the Lincoln Regional Center.

**Background**

In 1992, the plaintiff entered a plea of not guilty to 26 felony charges in Case Nos. 3202 and 3204 in the District Court of Hayes County, Nebraska.  After trial in August of 1993, the jury returned a verdict of not responsible by reason of insanity on two charges, i.e., attempted murder and use of a firearm to commit a felony.[1]  According to ¶ 26 of the

---

[1] The plaintiff states that 22 charges were dismissed at trial, i.e., 10 charges of attempted second degree murder, 11 charges of use of a firearm to commit a felony, and one charge of resisting arrest, all in Case No. 3204.  Four charges in Case No. 3202 were tried, two resulting in a verdict of not guilty and two in a verdict of not responsible by reason of mental defect or insanity.

1

Amended Complaint, all charges involved allegations regarding a hostage-taking incident.

Neb. Rev. Stat. § 29-2203 states in pertinent part:

> Any person prosecuted for an offense may plead that he or she is not responsible by reason of insanity at the time of the offense and in such case the burden shall be upon the defendant to prove the defense of not responsible by reason of insanity by a preponderance of the evidence ....
>
> Upon the filing of the notice the court, on motion of the state, may order the defendant to be examined at a time and place designated in the order, by one or more qualified experts, appointed by the court, to inquire into the sanity or insanity of the defendant at the time of the commission of the alleged offense. The court may order that the examination be conducted at one of the regional centers or at any appropriate facility ....
>
> If the trier of fact acquits the defendant on the grounds of insanity, the verdict shall reflect whether the trier acquits him or her on that ground alone or on other grounds as well. When the defendant is acquitted solely on the ground of insanity, the court shall have exclusive jurisdiction over the defendant for disposition consistent with the terms of this section and sections 29-3701 to 29-3704.

Upon receipt of a verdict of acquittal pursuant to Neb. Rev. Stat. § 29-2203, the court conducts a probable cause hearing pursuant to Neb. Rev. Stat. § 29-3701 on the issue of dangerousness. Upon probable cause to believe the acquittee is dangerous to himself or others or will become so in the foreseeable future, the court orders an evaluation. The superintendent of the regional center or the director of any other facility to which the person is referred for evaluation becomes responsible for supervising the evaluation and the preparation of an individualized treatment plan.

Neb. Rev. Stat. § 29-3702 provides for an evidentiary hearing on the issue of dangerousness. Absent clear and convincing evidence of such dangerousness, the court must unconditionally release the acquittee from further court-ordered treatment. Upon clear and convincing evidence of dangerousness, on the other hand, the court shall "place the person in the least restrictive available treatment program that is consistent with the treatment needs of the person and the safety of the public. Personnel at the facility providing the treatment program shall obey the court-ordered conditions ...." Id.

Neb. Rev. Stat. § 29-3703 requires annual reviews by the court and, upon motion, evidentiary hearing(s). Independent psychiatric or psychological evaluations may be

2

ordered. Treatment programs must submit reports at least annually. If the court orders placement in a less restrictive treatment program, the applicable regional center having custody of the acquittee must devise a discharge plan. If, at any point, the court finds the acquittee no longer poses a danger to himself or others, the acquittee must be unconditionally released. Pursuant to Neb. Rev. Stat. § 29-3704, the acquittee is entitled to appointed counsel and due process at every hearing referenced in Neb. Rev. Stat. §§ 29-3701 to 29-3703.

## Claims

Defendant-District Judge John J. Battershell, who presided over the plaintiff's trial, committed the plaintiff to the Lincoln Regional Center ("LRC") after the verdict in Case No. 3202. As the plaintiff notes, Judge Battershell has continuing responsibility for reviewing and approving the plaintiff's treatment, for deciding whether the plaintiff's current placement constitutes the least restrictive available treatment program appropriate for the plaintiff's current condition, and for determining whether the plaintiff should be released.

Defendant-Nancy Montanez is the Director of the Nebraska Department of Health and Human Services ("HHS"), with supervisory responsibility for the LRC. Defendant-Bill Gibson is the Chief Executive Officer ("CEO") of the LRC who, by order of Judge Battershell, has custody of the plaintiff and who has the supervisory and reporting obligations set forth in Neb. Rev. Stat. § § 29-3701 *et seq.*

The plaintiff has sued Judge Battershell, HHS Director Montanez and LRC CEO Gibson solely in their *official* capacity (referred to by the plaintiff as "professional capacity"). In addition, the plaintiff has sued the following defendants in their *individual* capacity only: Jessie Rasmussen, former Director of HHS; Bill Zinn, former CEO of the LRC; Barbara Ramsey, former CEO of the LRC; S. Rajendran, M.D., former LRC Clinical Director; Scott Moore, M.D., former LRC Clinical Director; Louis Martin, M.D., President of Medical Staff at LRC and plaintiff's treating physician; Jim Mays, former Director of the Maximum Security Unit of the LRC; and Corrine McCoy, LRC Maximum Security Unit Program Director.

Liberally construing the Amended Complaint, the plaintiff alleges claims which can be divided into two categories, i.e., those based on past events -- in particular those related

to the plaintiff's original commitment, and those based on present circumstances.

## Past Events

Claims

Of the claims relating to past events, the plaintiff begins with actions dating back to 1993 and 1994 when Bill Zinn, Dr. Rajendran, Dr. Moore, and Dr. Martin allegedly reached the conclusion, during the plaintiff's trial or evaluation period directly thereafter, that the plaintiff was guilty of all 26 felonies charged in Case Nos. 3202 and 3204. The plaintiff alleges that beginning with his evaluation in 1993 and 1994, Zinn, Rajendran, Moore and Martin intentionally spread misinformation about the plaintiff to others, resulting in a false or fraudulent medical assessment of the plaintiff as mentally ill and dangerous at the time of his commitment to the LRC and thereafter. The false information spread by Zinn, Rajendran, Moore and Martin also resulted in medical assessments diagnosing the plaintiff with a "delusional disorder" or a "thought disorder." Even worse, from the plaintiff's perspective, Zinn, Rajendran, Moore and Martin directly or indirectly caused the treatment plan adopted by Judge Battershell to include as a primary feature the goal of requiring the plaintiff to admit responsibility, i.e., guilt, for all 26 felonies which had been charged in Case Nos. 3202 and 3204, notwithstanding the dismissal of 22 those charges, the unconditional acquittal of two and the acquittal by reason of mental defect of the remaining two charges.

From and after 1994, the plaintiff vigorously attempted to have false information removed from his LRC records. He sent grievances and letters to former HHS Director Rasmussen, former LRC CEO Ramsey and others. Apparently, although not clear from the Amended Complaint, the plaintiff has not succeeded in establishing either that the challenged information is false or that even if the challenged information is false, he should be released from confinement.

Applicable Law

As the defendants point out in their Motion to Dismiss (filing no. 30), the plaintiff may not directly or indirectly litigate the validity of his original commitment in this civil rights action. Insofar as the plaintiff is alleging that any of the defendants wrongfully caused his involuntary commitment by their false statements and deliberate misdiagnoses, he may not challenge the factual basis for his original judgment of commitment in an action for

damages under 42 U.S.C. § 1983.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (An action under 42 U.S.C. § 1983 which would call into question the lawfulness of a plaintiff's confinement is not cognizable until after the judgment has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

The principles pronounced in Heck apply to civil commitments.  See, e.g., Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1139-40 (9th Cir. 2005) ("Heck's favorable termination rule was intended to prevent a person in custody from using § 1983 to circumvent the more stringent requirements for habeas corpus. Unlike the PLRA, the habeas statute is not textually limited to 'prisoners.'  Rather, § 2254 directs that a federal court 'shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court.'... It is well established that detainees under an involuntary civil commitment ... may use a § 2254 habeas petition to challenge a term of confinement."). See also Von Flowers v. Leean, 215 F.3d 1331, 2000 WL 554518 at **2 (7th Cir.) (unpublished) (the plaintiff, serving an indeterminate civil commitment under Wisconsin's sexual predator law, "is not entitled to sue for damages for his allegedly unconstitutional confinement until he shows that the order of commitment has already been invalidated"), cert. denied, 531 U.S 866 (2000).  Accord Hubbs v. Alamao, 360 F. Supp.2d 1073, 1080-81 (C.D. Cal. 2005) (Heck precludes § 1983 conspiracy and equal protection claims by individual committed to state hospital as a sexual predator, as the claims implied the invalidity of the commitment); Rogers v. Illinois Dept. of Corrections Special Eval. Unit, 160 F. Supp.2d 972, 977-78 (N.D. Ill. 2001) (Heck bars § 1983 claim that unconstitutional criteria were used to select sex offenders for civil commitment proceedings).

## Present Circumstances

<u>Claims</u>

Liberally construing the Amended Complaint, the plaintiff also claims that he continues to be subjected to behavioral modification and treatment programs at LRC which violate his rights because they are premised on the goal of forcing him to incriminate himself and to admit guilt to dismissed felony charges.   The plaintiff contends that he is

5

not receiving appropriate treatment or services in the least restrictive available setting and that those of the defendants still involved in his treatment are irrationally fixated on coercing him to admit responsibility for the 26 felonies charged in 1992.

In his Motion for a TRO, the plaintiff adds that Dr. Martin, on behalf of HHS and others, has threatened the plaintiff that if he continues to be noncompliant, he will be transferred to the Norfolk Regional Center ("NRC") where sex offenders are sent when they refuse treatment at the LRC (even though the plaintiff is not a sex offender). Transfer to the NRC would extinguish the plaintiff's chances of receiving less restrictive treatment or release from confinement and would simply warehouse him indefinitely. The plaintiff's Motion for a TRO adds a claim to this case of threatened or actual retaliation for the plaintiff's exercise of his First Amendment rights of speech and access to the courts.

Applicable Law

After the decision by the United States Supreme Court in Jones v. United States, 463 U.S. 354 (1983), an insanity acquittee may be confined in a mental institution indefinitely upon a finding at the criminal trial of not guilty by reason of mental defect or insanity. Id. at 363-68. Such a finding is sufficiently probative of mental illness and dangerousness to justify the commitment. Id. Thus, "when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." Id. at 370.

However, in Foucha v. Louisiana, 504 U.S. 71 (1992), the Court clarified that an insanity acquittee has an ongoing right to due process procedures adequate to ensure his release once the acquittee is either no longer dangerous or no longer mentally ill. Id. at 77-83. Also, a four-Justice plurality of the Court considered that, as a matter of equal protection, an insanity acquittee who has recovered his sanity must be released just as any other person subject to an involuntary civil commitment would be entitled to release in such circumstances. Id. at 86 (but see O'Connor, J., concurring in the judgment but declining to reach the equal protection issue, id. at 88.).

Therefore, an insanity acquittee such as the plaintiff has continuing rights to due

6

process and equal protection during the entire period of the commitment. While the plaintiff's right to challenge the original commitment may expire or may be barred by principles such as those pronounced in Heck v. Humphrey, the plaintiff's entitlement to ongoing reviews and other protections to ensure that the State remains empowered to detain him do not expire.

In addition to his rights to due process and equal protection to ensure the validity of his continued detention, the plaintiff has other rights which he may assert in litigation pursuant to 42 U.S.C. § 1983. In Youngberg v. Romeo, 457 U.S. 307 (1982), the Supreme Court held that a committed individual "enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." Id. at 324. The Eighth Amendment "deliberate indifference" standard applied to convicted prisoners is a *minimum* standard of culpability. Dolihite v. Maughon By and Through Videon, 74 F.3d 1027, 1041 (11th Cir. 1996). "[P]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. at 321-22. In addition, "[w]hen a person is institutionalized-and wholly dependent on the State-it is conceded by [the State] that a duty to provide certain services and care does exist, although even then a State necessarily has considerable discretion in determining the nature and scope of its responsibilities." Id. at 315. Thus, a state bears responsibility for providing services, at least to some degree, to involuntarily committed psychiatric patients.

Furthermore, involuntary administration of psychotropic medication to a mental patient implicates a liberty interest traceable to the Due Process Clause itself. Washington v. Harper, 494 U.S. 210, 221-22, 227 (1990). Thus, the plaintiff's rights to constitutional conditions of confinement do not expire, are not barred, and may be asserted in an action such as this pursuant to 42 U.S.C. § 1983.

## Motion to Dismiss

The defendants move to dismiss all or part of the complaint on a variety of grounds. Although the motion addresses the plaintiff's initial complaint, I consider the motion as it

7

applies to the Amended Complaint.

Past Claims vs. Present Circumstances

First, the defendants correctly assert that all claims which directly or indirectly attack the plaintiff's original commitment are barred by the principles stated in Heck v. Humphrey discussed above. The values and objectives implicit in Heck v. Humphrey apply as well to a plaintiff who has been involuntarily committed as to a convicted prisoner serving a sentence. Federalism, avoiding the potential for federal-state tension, and the objectives of preserving consistency and finality are at stake in both contexts. See Heck v. Humphrey, 512 U.S. at 484-89. Therefore, insofar as the plaintiff is attempting to recover damages or other relief for the alleged wrongs he suffered in connection with his *initial* commitment to the LRC, those claims must be dismissed, without prejudice, until such time as the plaintiff succeeds in a collateral attack on the original order of commitment.

On the other hand, the claims relating to the validity of the plaintiff's present detention and the current conditions of his confinement are not dismissed. If he is no longer mentally ill or if he is not dangerous, if he is not being held in the least restrictive available treatment program consistent with his condition, if he is receiving unconstitutionally deficient services, if he is being subjected to involuntary administration of psychotropic medication, or even if his continued detention is based on false information which is material, the plaintiff's due process and equal protection rights may be implicated. In addition, if he is subjected to retaliation for exercising First Amendment rights, the plaintiff would have a viable cause of action.

Limitations on Monetary Relief

In his Amended Complaint, the plaintiff has sued defendants-Battershell, Montanez and Gibson in their official capacity only. A suit against a public employee in the employee's official capacity is actually a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, a claim against a state employee, in his or her official capacity, is in reality a claim against the state itself, as the entity that employs the officer. In this case, that means Battershell, Montanez and Gibson, as *persons*, are not defendants in this action. In their official capacity, those defendants are, by operation of law, the State of Nebraska, for purposes of this litigation.

"States and state officers acting in their official capacity are immune from suits for damages in federal court." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598, 609 (2001), *citing* Edelman v. Jordan, 415 U.S. 651, 663 (1974). State sovereign immunity as recognized and preserved by the Eleventh Amendment to the United States Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her official capacity. Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Therefore, no damages may be recovered from defendants-Battershell, Montanez and Gibson in their official capacity.[2]

Limitations on Declaratory and Injunctive Relief

The doctrine of Ex Parte Young, 209 U.S. 123 (1908), holds that the Eleventh Amendment does not bar suits for prospective injunctive relief against state officials in their official capacity. However, while a suit to enjoin state officials in their official capacity may proceed if the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, a declaratory judgment establishing past liability of the State is nevertheless forbidden by the Eleventh Amendment. Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 646 (2002).

The plaintiff may not, however, recover injunctive relief from Judge Battershell. Although the Supreme Court held in 1984 that prospective injunctive relief could be granted against a judicial officer acting in his or her judicial capacity, see Pulliam v. Allen, 466 U.S. 522, 541-42 (1984), Congress amended 42 U.S.C. § 1983, in 1996, by enacting the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847 (1996). Section 309(c) of that Act bars injunctive relief in any § 1983 action, with limited exceptions, "against a judicial officer." As amended, 42 U.S.C. § 1983 provides:

---

[2]Judge Battershell would also be shielded, in his individual capacity, from any claims by the plaintiff for damages. Judges have absolute immunity from suits for damages arising from acts, whether or not erroneous, in their judicial capacity as long as such actions were not taken in the complete absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991). The pleadings indicate that Judge Battershell has acted at all times within his jurisdiction as a state district judge.

9

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, **except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable**. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(Emphasis added.) The plaintiff alleges neither the violation of a declaratory decree nor the unavailability of declaratory relief. His claims for injunctive relief against Judge Battershell for actions taken in the judge's judicial capacity are therefore barred under § 1983.

Service of Process

The defendants assert that of the persons sued in their individual capacity, only two, Ramsey and Mays, have been served in their individual capacity. The Nebraska Attorney General is required by Neb. Rev. Stat. § 25-510.02(1) to accept service of process on behalf of state employees in their official capacity, but the Attorney General is not required to, and usually does not, accept individual-capacity service for the same people. Accordingly, undue time and expense are consumed every year by court staff and the U.S. Marshal, on behalf of pro se litigants proceeding in forma pauperis, to effect service of process on state employees in their individual capacity.

As the plaintiff's remaining claims primarily relate to his present circumstances and the remedies of declaratory and prospective injunctive relief if those circumstances violate the United States Constitution, the plaintiff may complete the forms for service on the defendants, in their individual capacity, who remain involved in his detention and treatment. Those defendants include Louis Martin, M.D. and Corrine McCoy.[3]  Therefore, the Clerk

---

[3]The plaintiff has already served current HHS Director Montanez and LRC CEO Gibson in their official capacity, and he does not purport to sue those defendants in their individual capacity. If the plaintiff believes that other defendants are presently violating his constitutional rights, he may file a motion for more service of process forms, with an explanation as to why additional persons should be served in their individual capacity.

of Court shall send the plaintiff two summons forms and two Form 285s for the plaintiff to complete and return to the court for service of process by the U.S. Marshal on Martin and McCoy in their individual capacity. State employees in their individual capacity may be served wherever they can be found and will accept service of process themselves or through a person authorized to receive a summons on their behalf.[4]

THEREFORE, IT IS ORDERED:

1. That filing no. 40, the plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, is denied at this time, subject to reassertion in the event of an actual transfer to the NRC;

2. That filing no. 34, the plaintiff's Motion for Leave to File Amended Complaint, is granted. The Clerk is directed to re-file the attachment to filing no. 34 as an amended complaint, and it will become the operative complaint in this action;

3. That filing no. 30, the defendants' Motion to Dismiss, is granted in part and denied in part as set forth below:

    a. That the plaintiff's claims for monetary, declaratory and injunctive relief based on the plaintiff's original commitment to the LRC, his 1993-94 medical assessment as mentally ill and dangerous at the time of his commitment to the LRC, the allegedly false information and deliberate misdiagnoses and any other challenge to the factual basis for his original judgment of commitment are dismissed without prejudice from this litigation;

    b. That the plaintiff's claims for monetary relief against defendants in their official capacity, i.e., the State of Nebraska, are dismissed with prejudice from this litigation;

    c. That the plaintiff's claims against Judge Battershell in his judicial capacity for prospective injunctive relief are dismissed with prejudice;

    d. That the plaintiff's claims relating to the validity of his present detention and the constitutionality of his present conditions of confinement are not dismissed; and

---

[4] If the defendants will not accept a summons from the Marshal, upon a motion by the plaintiff, the court will consider alternatives such as a Waiver of Service of Summons form or service by publication.

    4.    That the plaintiff may serve defendants Louis Martin, M.D. and Corrine McCoy, in their individual capacity, wherever they may be found and will accept service of process themselves or through a person authorized to receive a summons on their behalf, e.g., at home or at the LRC;

    a.    That the Clerk of Court shall send the plaintiff a copy of this order and two summons forms along with two Form-285s (one of each to be completed by the plaintiff for service of process on each defendant in the defendant's individual capacity);

    b.    That the plaintiff shall, as soon as possible, complete and return the forms to the Clerk of Court; upon receipt of the completed forms, the Clerk shall sign each summons, forward them, together with a copy of the complaint, to the U.S. Marshal for service of process; the Marshal shall serve each summons and complaint without payment of costs or fees; service may be by certified mail pursuant to Fed. R. Civ. P. 4 and Nebraska law in the discretion of the Marshal;

    c.    That on the court's own motion, the plaintiff shall have an extension of 30 days from the date of this order to complete and return the forms for service of process on the defendants in their individual capacity; thereafter, the U.S. Marshal shall have 30 more days to serve the defendants; and

    d.    That if a defendant cannot be found or will not accept a summons from the Marshal, the plaintiff may file a motion for leave to serve that person by waiver of service of summons or publication, and the court will give those options consideration.

    February 13, 2006.        BY THE COURT:

                              /s *Richard G. Kopf*
                              United States District Judge