IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN MAXWELL MONTIN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05cv3109 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| JOHN J. BATTERSHELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following pending motions:

1. Filing nos. 50 and 53, the plaintiff's Motions for Clerk's Entry of Default and for Default Judgment against defendants, Jim Mays; Y. Scott Moore; S. Rajendran; Barbra Ramsey; Jessie Rasmussen and Bill Zinn.

2. Filing no. 63, the plaintiff's Addendum to the Amended Complaint;

3. Filing no. 66, the plaintiff's Motion for Joinder of Claims (i.e., motion to append the Addendum to the Amended Complaint);

4. Filing no. 68, the plaintiff's Motion to Serve by Publication (i.e., motion to serve defendant-S. Rajendran, M.D. by publication); and

5. Filing no. 70, the plaintiff's Motion to Serve Summons (i.e., motion for leave to serve defendants-Bill Gibson, Louis Martin, Barbra Ramsey and Y. Scott Moore, if the court approves the plaintiff's Addendum to the Amended Complaint).

## BACKGROUND

The plaintiff, John Maxwell Montin, was committed to the Lincoln Regional Center ("LRC") after a verdict of not responsible by reason of insanity in 1992. In his First Amended Complaint (attachment to filing no. 34), which is currently the operative complaint in this case, the plaintiff sought declaratory, injunctive and monetary relief from persons who allegedly conspired to deny him due process and equal protection, to infringe his privilege against self-incrimination, and to inflict cruel and unusual punishment upon the plaintiff during his confinement at the LRC.

1

**THE DEFENDANTS**

Persons Presently Involved with the Plaintiff

Nancy Montanez is the Director of the Nebraska Department of Health and Human Services ("HHS"), with supervisory responsibility for the LRC. Bill Gibson is the Chief Executive Officer ("CEO") of the LRC. Louis Martin, M.D. is the President of the Medical Staff at the LRC and the plaintiff's treating physician. Corrine McCoy is the LRC Maximum Security Unit Program Director.

Persons No Longer Involved with the Plaintiff

The following named defendants are no longer involved in the plaintiff's care or treatment or in decisions relating to his custody: Jessie Rasmussen, former Director of HHS; Bill Zinn, former CEO of the LRC; Barbara Ramsey, former CEO of the LRC; Jim Mays, former Director of the Maximum Security Unit of the LRC, and S. Rajendran, M.D., former LRC Clinical Director. The plaintiff states that Y. Scott Moore, M.D. served as the plaintiff's primary care-giver from 1998 until 1999, when Moore received a promotion to LRC Clinical Director, the position he presently holds. While Moore no longer participates in the plaintiff's care or treatment, the plaintiff states that "[a]fter his advancement to Clinical Director to date [Moore] still acts as witness for prosecution." (Filing no. 63 at 3 ¶ 6.) However, as discussed below in this Memorandum and Order, the plaintiff is barred from relitigating the legitimacy of his confinement in the LRC or the validity of his continued custody. Therefore, Moore's role as a "witness for the prosecution" in prolonging the plaintiff's custody cannot be the subject of a claim in this litigation.

**CLAIMS BARRED IN THIS ACTION**

In filing no. 42, my Memorandum and Order of February 13, 2006, incorporated herein by this reference, I dismissed some of the plaintiff's claims, and I explained important limitations which the applicable law imposes on this litigation. Additional explanations appear necessary.

This case demonstrates the difficulties of explaining to a confined person precisely which claims must be brought in a habeas corpus action, and which may be presented in a civil rights complaint pursuant to 42 U.S.C. § 1983. The distinction is important, among other reasons, because it is a cardinal principle of federal law that certain claims may not

2

be presented in the form of a civil rights complaint unless and until the plaintiff has first prevailed in a habeas corpus or similar proceeding.

Release from custody is the exclusive province of a habeas corpus action. See generally Wilkinson v. Dotson, 125 S. Ct. 1242 (2005): "The Court initially addressed the relationship between § 1983 and the federal habeas statutes in Preiser v. Rodriguez .... [T]he language of the habeas statute is more specific, and the writ's history makes clear that it traditionally 'has been accepted as the specific instrument to obtain release from [unlawful] confinement.' Preiser, 411 U.S., at 486...." On the other hand, a "prisoner's claim for an injunction barring future unconstitutional procedures" does not "fall within habeas' exclusive domain." Wilkinson v. Dotson, 125 S. Ct. at 1247. "[T]he [United States Supreme] Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id.

The decisions by the Supreme Court defining the line between habeas and § 1983 actions include Heck v. Humphrey, 512 U.S. 477 (1994), in which the Court held that a plaintiff may not directly or indirectly litigate the validity of his confinement or of his *continued* custody in a civil rights action. Id. at 486-87 (An action under 42 U.S.C. § 1983 which would call into question the lawfulness of a plaintiff's commitment is not cognizable until after the judgment has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

The principles pronounced in Heck v. Humphrey extend to involuntary civil commitments. See, e.g., Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1139-40 (9th Cir. 2005) ("Heck's favorable termination rule was intended to prevent a person in custody from using § 1983 to circumvent the more stringent requirements for habeas corpus .... [T]he habeas statute is not textually limited to 'prisoners.' Rather, § 2254 directs that a federal court 'shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court.'... It is well established that detainees under an

3

involuntary civil commitment ... may use a § 2254 habeas petition to challenge a term of confinement."). Accord <u>Hubbs v. Alamao</u>, 360 F. Supp.2d 1073, 1080-81 (C.D. Cal. 2005) (<u>Heck</u> precludes § 1983 conspiracy and equal protection claims by individual committed as a sexual predator, as the claims implied the invalidity of the commitment); <u>Rogers v. Illinois Dept. of Corrections Special Eval. Unit</u>, 160 F. Supp.2d 972, 977-78 (N.D. Ill. 2001) (<u>Heck</u> bars § 1983 claim that unconstitutional criteria were used to select sex offenders for civil commitment proceedings).

<u>Claims Relating to Original Commitment and Continued Confinement</u>

    What the foregoing legal principles mean for the plaintiff in this case is actually very simple. He will not be heard to challenge his original commitment. He will not be heard to complain about his medical or mental evaluation in 1993 and 1994. All of the acts he alleges by defendants-Zinn, Rajendran, Moore, Martin, Rasmussen, and Ramsey, who contributed to his original or continued custody by spreading misinformation, who contributed to false or fraudulent medical assessment(s) of the plaintiff as mentally ill and dangerous at the time of his commitment to the LRC or thereafter, and who allowed misinformation to remain in the plaintiff's medical file, are barred. Those claims, if the plaintiff were to prevail, would cast doubt on the validity of his original commitment or the legitimacy of his continued confinement.

    The plaintiff's involuntary commitment has never been overturned, vacated or set aside. Thus, the principles expressed in <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994), preclude the plaintiff from directly or indirectly substituting this civil rights action for the exclusive province of habeas corpus jurisprudence.

    Specifically, the allegations set forth in ¶¶ 24 through 55 of the First Amended Complaint (filing no. 34) cannot be used to assert claims against defendants-Zinn, Martin, Rajendran and Moore. Similarly, the allegations set forth in ¶¶ 56 through 90 of the First Amended Complaint cannot be used to assert claims against defendants-Ramsey, Mays and Rasmussen, as well as Rajendran and Moore. The allegations of ¶¶ 91 through 99 of the First Amended Complaint cannot be used to assert claims against defendants-Moore, Martin and Ramsey. If taken as true, the foregoing paragraphs would lead to the conclusion that the plaintiff should not be at the LRC. As stated, in the absence of a prior

favorable outcome in a habeas corpus or similar proceeding, the decision in Heck v. Humphrey bars the plaintiff from maintaining a § 1983 action which could produce an inference that he should be released from custody.

Official Capacity Claims

In filing no. 42, I also dismissed some of the plaintiff's claims on other grounds, for example, the plaintiff's damages claims against the official-capacity defendants. Public employees have two capacities: official capacity and individual capacity. A suit against a public employee in the employee's official capacity is actually a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, a claim against a state employee, in his or her official capacity, is in reality a claim against the state itself, as the entity that employs the officer. All defendants are or were employees of the State of Nebraska. As such, sovereign immunity precludes the plaintiff's claims against them, in their official capacity, for damages. In filing no. 42, I dismissed those claims. No defendant, in his or her official capacity, can be made to answer to the plaintiff in this litigation for monetary relief.

Claims Against Judge

I dismissed the plaintiff's claims against District Judge John J. Battershell, who presided over the plaintiff's trial and committed the plaintiff to the LRC, because the Judge, in his individual capacity, has immunity from the plaintiff's claims for damages. In addition, injunctive relief may not be recovered from Judge Battershell. See 42 U.S.C. § 1983, as amended ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable....").

Additional Limits on Claims for Declaratory and Injunctive Relief

The doctrine of Ex Parte Young, 209 U.S. 123 (1908), holds that the Eleventh Amendment does not bar suits for prospective injunctive relief against state officials in their official capacity. However, while a suit to enjoin state officials in their official capacity may proceed if the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, a declaratory judgment establishing *past* liability of the State is nevertheless forbidden by the Eleventh Amendment. Verizon Maryland, Inc.

v. Public Service Com'n of Maryland, 535 U.S. 635, 646 (2002).

In addition, no claims for prospective injunctive relief may be maintained against defendants who no longer work at the LRC and, thus, are no longer involved in decisions concerning the plaintiff's confinement or treatment. As to such defendants, the plaintiff's claims for prospective injunctive relief have become moot.

## MATTERS WHICH MAY NOT BE BARRED

Denial of Due Process Reviews

In filing no. 42, I explained that an insanity acquittee such as the plaintiff has an ongoing right to due process procedures adequate to ensure his release once the acquittee is either no longer dangerous or no longer mentally ill. Foucha v. Louisiana, 504 U.S. 71, 77-83 (1992). Thus, the plaintiff has an entitlement to ongoing reviews and other protections to ensure that the State remains empowered to detain him. If he is being denied due process, he may litigate that claim. However, in his Amended Complaint, the plaintiff did not complain that he had been denied any of the reviews afforded by state law.

Conditions of Confinement

The plaintiff is also entitled to complain about certain conditions of his confinement. In Youngberg v. Romeo, 457 U.S. 307 (1982), the Supreme Court held that a committed individual "enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." Id. at 324. The Eighth Amendment "deliberate indifference" standard applied to convicted prisoners is a *minimum* standard of culpability. Dolihite v. Maughon By and Through Videon, 74 F.3d 1027, 1041 (11th Cir. 1996). "[P]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. at 321-22. In addition, "[w]hen a person is institutionalized-and wholly dependent on the State-it is conceded by [the State] that a duty to provide certain services and care does exist, although even then a State necessarily has considerable discretion in determining the nature and scope of its responsibilities." Id. at 315. Thus, a state bears responsibility for providing services, at least to some degree, to involuntarily committed psychiatric patients, and, if appropriate, the plaintiff may seek relief

6

regarding the conditions of his confinement.

In his First Amended Complaint, the plaintiff presented a few factual allegations which could be liberally construed as related to his conditions of confinement. For example, he objected to a behavioral modification program allegedly imposed by an unqualified program director. I do not address whether such allegations state a claim on which relief may be granted. Instead, having once again delineated the kinds of claims which can and cannot be asserted in this action I will permit the plaintiff to amend his complaint to try to state claims on which relief may be granted.

In his Addendum, the plaintiff has once again resurrected all of the factual allegations about past events which I previously explained in filing no. 42 could not form the basis for a civil rights claim in this case. Allegations concerning misdiagnoses, false and fabricated information about the plaintiff, refusal to correct state records about the plaintiff, altered medical history, and other conspiratorial acts to keep the plaintiff confined are all off limits in light of Heck v. Humphrey. All of those allegations give rise to an inference that the plaintiff's original and/or continued confinement might be invalid.[1]

THEREFORE, IT IS ORDERED:

1. That filing nos. 50 and 53, the plaintiff's Motions for Clerk's Entry of Default and for Default Judgment against defendants, Jim Mays; Y. Scott Moore; S. Rajendran; Barbra Ramsey; Jessie Rasmussen and Bill Zinn, are denied;

2. That filing no. 66, the plaintiff's Motion for Joinder of Claims (i.e., motion to append the Addendum to the Amended Complaint), is denied; the Addendum (filing no. 63) suffers from the same deficiencies as the First Amended Complaint;

3. That filing no. 68, the plaintiff's Motion to Serve by Publication (i.e., motion to serve defendant-S. Rajendran, M.D. by publication), is denied;

4. That filing no. 70, the plaintiff's Motion to Serve Summons (i.e., motion for

---

[1] If the plaintiff wishes to litigate such matters in a civil rights case, he must first bring an appropriate appeal from an annual review and litigate the propriety of his confinement in the state courts of Nebraska. He must prevail in such an action or in a subsequent federal habeas corpus action. Until he obtains a favorable outcome regarding his commitment, he cannot cast doubt on the validity of that commitment or test the duration of his confinement in this or any other civil rights action.

7

leave to serve defendants-Bill Gibson, Louis Martin, Barbra Ramsey and Y. Scott Moore, with summons, is denied;[2]

5.  That, for the reasons stated in this Memorandum and Order, Jim Mays, Bill Zinn, S. Rajendran, M.D., Jessie Rasmussen, Barbra Ramsey and Y. Scott Moore are dismissed from this litigation;

6.  That the plaintiff shall have until October 11, 2006 to file a Second Amended Complaint setting forth claim(s) on which relief may be granted against one or more of the remaining defendants in this case, i.e., Nancy Montanez, Bill Gibson, Louis Martin, M.D. and Corrine McCoy; and

7.  That the defendant(s) named in the Second Amended Complaint shall have twenty (20) days thereafter to answer or otherwise respond.

September 13, 2006.                      BY THE COURT:


                                         s/ *Richard G. Kopf*
                                         United States District Judge

---

[2]Gibson and Martin have been served with process, and the plaintiff has alleged, or may still allege, viable claims against them.